ANN A. BURNS v. PENDER R. McELROY, ADMINISTRATOR C.T.A. UNDER THE WILL
AND FOR THE ESTATE OF MAUDE H. BARNETT, DECEASED

No. 8126SC968

(Filed 18 May 1982)

1. **Appeal and Error § 42.2— exceptions to issues and instructions—failure to include evidence in record**

   Appellant failed to show error in the trial court's failure to submit certain issues to the jury and in the court's instructions where none of the evidence was included in the record on appeal.

2. **Evidence § 11.7— Dead Man's Statute—administrator not examined in own behalf—no opening of door for testimony**

   In an action to recover for services rendered to deceased during her lifetime, the Dead Man's Statute, G.S. 8-51, prohibited testimony by plaintiff concerning circumstances surrounding deceased's endorsement and delivery to plaintiff of a check payable to deceased on the day prior to deceased's death, and defendant administrator's admission in a responsive allegation in his answer that deceased "gave to plaintiff the sum of $4,544.83 with the request that she hold this money for her in safekeeping" did not constitute the administrator's being "examined in his own behalf" within the meaning of G.S. 8-51 so as to open the door for plaintiff's testimony.

3. **Trover and Conversion § 2— alleged conversion of proceeds of check—summary judgment improper**

   In an action to recover for services rendered to decedent, the trial court erred in entering summary judgment for defendant administrator on his counterclaim for conversion of the proceeds of a check payable to deceased which deceased endorsed and delivered to plaintiff on the day before her death, although plaintiff's evidence failed to show that the check was a gift causa mortis or a part payment for services, where the record discloses that plaintiff's possession of the check was at least initially authorized by deceased and that plaintiff does have possession of the proceeds of the check, since a genuine issue of material fact was presented as to whether such possession is wrongful.

APPEAL by plaintiff from *Allen, Judge.* Judgment entered 29 April 1981 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals on 29 April 1982.

This appeal arises from a civil action wherein plaintiff seeks to recover $9,021.40 from the estate of Maude Barnett, deceased, for services allegedly rendered to Barnett during her lifetime. In her complaint, plaintiff alleged that at Barnett's request, plaintiff had for a period of three years rendered 2680 hours of personal

services, at a total value of $13,400, for Barnett, with the mutual understanding that Barnett would pay plaintiff for such services. Plaintiff also alleged that she loaned or advanced to Barnett, at Barnett's request, $166.23, for which she had not been reimbursed, and that "[t]he Estate of Maude H. Barnett is justly and legally indebted to plaintiff in the sum of $13,566.23 for services rendered and monies loaned or advanced." Plaintiff further alleged that on the day before her death, Barnett "gave to the plaintiff the sum of $4,544.83 with the request that she hold . . . [the] money for her in safekeeping, but stated that if anything happened to her she wanted plaintiff to have the money," and that this sum was a "gift causa mortis as part payment" by Barnett of the debt owed to plaintiff. Plaintiff prayed for judgment against the estate of Maude H. Barnett in the amount of $9,021.40, such amount representing the balance of the debt owing for the services allegedly rendered by plaintiff.

Defendant filed an answer denying the material allegations of plaintiff's claim for services, and alleged a counterclaim to recover the $4,544.83 delivered to plaintiff by the deceased on the day before her death. In the counterclaim, defendant alleged that Barnett had delivered to plaintiff a check payable to Barnett in the amount of $4,544.83, but that Barnett had instructed plaintiff to safeguard the check in plaintiff's safety deposit box until Barnett got out of the hospital, and that plaintiff has continued "to refuse to surrender such money[,] and her continued wrongful possession, control and use of this money constitutes a conversion of the check or proceeds belonging to Mrs. Barnett."

In plaintiff's reply, plaintiff denied the material allegations of defendant's counterclaim, and alleged that upon delivery of the contested check to plaintiff, Barnett endorsed the check and instructed plaintiff to cash the check and place the funds in plaintiff's safety deposit box and stated to plaintiff, " 'If anything happens to me', she wanted the plaintiff to have the money as her own," "as a gift causa mortis and as in part payment of the indebtedness owed to plaintiff by Mrs. Barnett."

With respect to plaintiff's claim for services, the court submitted the following issues to the jury, which were answered as indicated:

1. Did the Plaintiff, Ann A. Burns, transport the Defendant, take care of the Decedent's property, perform errands and other personal services for Maude H. Barnett under such circumstances that Maude H. Barnett should be required to pay for them?

ANSWER: No.

2. What amount is Ann A. Burns entitled to recover from Maude H. Barnett?

ANSWER: . . .

The court, "having considered the complete file in this action in light of the jury's verdict," ruled that there were no genuine issues of material fact with respect to defendant's counterclaim and "that Defendant is entitled to the funds [in plaintiff's possession] as a matter of law." From a judgment on the verdict that plaintiff recover nothing on her claim against the estate for services, and a judgment for defendant in the amount of $4,544.83 plus interest against plaintiff on defendant's counterclaim, plaintiff appealed.

*Lane and Helms, by Thomas G. Lane, Jr., for plaintiff appellant.*

*James, McElroy & Diehl, by Allen J. Peterson and David M. Kern, for defendant appellee.*

HEDRICK, Judge.

[1] Based on Assignments of Error numbered 3, 4, and 5, plaintiff contends that the trial court erred in "not submitting certain issues" to the jury and in its instructions to the jury with respect to plaintiff's claim for services.

"The issues to be submitted to the jury are those raised by the pleadings and supported by the evidence." *Johnson v. Massengill,* 280 N.C. 376, 384, 186 S.E. 2d 168, 174 (1972). "The duty of the judge is to declare the law *arising on the evidence* and to explain the application of the law thereto. Rule 51(a) of the Rules of Civil Procedure." *Link v. Link,* 278 N.C. 181, 198, 179 S.E. 2d 697, 707 (1971). "The chief purpose of a charge is to aid the jury in clearly understanding the case and in arriving at a

correct verdict . . . [and to ensure] that the verdict represents a finding by the jury under the law and upon the evidence presented." *Warren v. Parks*, 31 N.C. App. 609, 612, 230 S.E. 2d 684, 687 (1976), *disc. rev. denied*, 292 N.C. 269, 233 S.E. 2d 396 (1977). "The record on appeal in civil actions . . . shall contain . . . so much of the evidence . . . as is necessary for understanding of all errors assigned." Rule 9(b)(1), N.C. Rules of Appellate Procedure. In the present case, none of the evidence is reproduced in the record, nor has a transcript of the testimony been provided. We are therefore unable to evaluate the assignments of error relating to the instructions and issues. The appellant has the burden of showing error in the trial court's judgment. *Brown v. Boney*, 41 N.C. App. 636, 255 S.E. 2d 784, *disc. rev. denied*, 298 N.C. 294, 259 S.E. 2d 910 (1979). With respect to these assignments of error, she has failed to do so.

[2] Plaintiff next assigns error to the trial judge's refusal to allow plaintiff to testify with respect to the circumstances surrounding the deceased's delivery to plaintiff of the $4,544.83 check. The testimony of the plaintiff, heard by the judge on *voir dire*, is reproduced in the record as follows: Barnett first delivered the check to plaintiff on a Friday to keep for her over the weekend; plaintiff returned the check to Barnett on the following Monday; Barnett fractured her hip that Monday and was hospitalized; while at the hospital and after undergoing surgery, Barnett endorsed the check and asked plaintiff to cash it for her and put the proceeds in plaintiff's safety deposit box until she was able to get out of the hospital; Barnett told plaintiff that if anything happened to her, that she wanted plaintiff to have the proceeds of the check. Pursuant to Barnett's instructions, plaintiff cashed the check and put the proceeds in her safety deposit for safekeeping. Barnett died two days later.

It seems clear that the trial judge excluded this testimony about communications and transactions between plaintiff and the now-deceased Barnett on the grounds that it violated the "Dead Man's Statute," G.S. § 8-51. The plaintiff argues that the court erred in excluding such testimony in that the defendant "opened the door" for plaintiff's proffered testimony when defendant himself, in response to the allegation in plaintiff's complaint that Barnett "gave to the plaintiff the sum of $4,544.83 with the request that she hold his [sic] money for her in safekeeping," admit-

ted in an allegation in his answer that "Barnett delivered to Plaintiff the sum of" $4,544.83.

"The law that an interested survivor to a personal transaction or communication cannot testify with respect thereto against the dead man's estate is intended as a shield to protect against fraudulent and unfounded claims. It is not intended as a sword with which the estate may attack the survivor," *Carswell v. Greene*, 253 N.C. 266, 270, 116 S.E. 2d 801, 804 (1960); hence, G.S. § 8-51 contains an exception to the prohibition of the survivor's testimony when "the executor . . . is examined in his own behalf." This exception is designed to prevent the estate from using G.S. § 8-51 as both a shield and a sword.

In the present case, it is not at all clear that the allegation in defendant's answer, being merely part of the pleadings in the case, constitutes his being "examined in his own behalf." First, the allegation did not amount to *testimony* by the defendant and, hence, did not amount to his being "examined" at trial. Second, the answer's allegation of delivery by Barnett to the plaintiff is not necessarily an allegation favorable to the defendant executor, insofar as it does imply that plaintiff's possession of the check was at least initially authorized by Barnett; hence, the allegation was not really on the executor's "own behalf." Furthermore, even if this allegation did constitute a binding admission of delivery, such an admission by defendant of a fact initially broached by plaintiff can hardly amount to defendant's use of the "Dead Man's Statute" as a sword against plaintiff. Finally, the door is opened to the survivor's testimony only when the executor "is a voluntary witness testifying in his own behalf, and not when he is forced upon the witness stand to testify against his interest." *Sorrell v. McGhee*, 178 N.C. 279, 281, 100 S.E. 434, 435 (1919). "A party does not have it in his power to remove his own incompetency by calling the administrator as a witness and examining him concerning the transaction in controversy." 1 Stansbury's N.C. Evidence, § 75, 229 (Brandis rev. 1973). Under G.S. § 1A-1, Rule 8(b), a defendant, in his answer, "shall admit or deny the averments upon which the adverse party relies;" hence, plaintiff's allegations put defendant in a situation in which he had to aver something with respect to plaintiff's receiving the check, and such a responsive averment should not suffice to "open the door" for plaintiff. Thus the trial court did not err in excluding the

Burns v. McElroy

testimony of plaintiff with respect to the personal transaction between the plaintiff and deceased as regards the delivery of the check for $4,544.83. The evidence, in our opinion, was clearly not admissible in plaintiff's claim against the estate for services rendered. This assignment of error is overruled.

[3] We note that in allowing defendant's motion for a directed verdict with respect to plaintiff's claim to have the proceeds of the check declared to be a "gift causa mortis," the trial judge apparently also relied on G.S. § 8-51 in excluding evidence with respect thereto. The trial court, relying on the jury's verdict against plaintiff's claim for services and apparently relying on his ruling directing a verdict for the defendant with respect to plaintiff's claim of "gift causa mortis," entered what amounts to a summary judgment for defendant on his counterclaim against plaintiff for conversion. The trial court simply declared that there were no genuine issues of material fact with respect to defendant's counterclaim. We find the trial court to be in error in this regard. Plaintiff, in her reply, specifically denied any wrongful possession or conversion of the funds. The record further discloses that plaintiff's possession of the check made payable to Barnett and endorsed by her was at least initially authorized by Barnett. Although plaintiff has failed to show that the delivery was a gift causa mortis or a part payment for services, the record discloses no more than that plaintiff does have possession of the funds; whether such possession is wrongful is a genuine issue of fact material to defendant's counterclaim for conversion. The burden of proving that plaintiff wrongfully converted these funds is on the counterclaiming defendant. Whether defendant can prove his claim of conversion against plaintiff without "opening the door" remains to be determined when the cause is heard upon remand for trial on defendant's counterclaim.

The result is: with respect to plaintiff's claim for services, we find no error; with respect to defendant's counterclaim, the summary judgment for defendant is reversed and remanded.

No error as to plaintiff's claim for services.

Reversed and remanded as to defendant's counterclaim.

Judges HILL and BECTON concur.